**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| FREDERICK T. ANDERSON, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:13-CR-0421-ODE-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:17-CV-1659-ODE-RGV |

**<u>FINAL REPORT AND RECOMMENDATION</u>**

This matter has been submitted to the undersigned Magistrate Judge for consideration of Frederick T. Anderson's <u>pro se</u> motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 62], the government's initial and supplemental responses, [Docs. 64; 66], and Anderson's reply, [Doc. 67]. For the reasons that follow, it is **RECOMMENDED** that Anderson's § 2255 motion be denied.

## I. PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a five-count indictment against Anderson and co-defendants David Starks and Deshawn Antoine Mackey, charging them in Count One with conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); in Count Two with an attempted Hobbs Act

robbery of the business Duty Free America, Inc., in violation of § 1951(a); in Count Three with carjacking, in violation of 18 U.S.C. § 2119; in Count Four with an attempted Hobbs Act robbery of the business J&D Trucking, in violation of § 1951(a); and in Count Five with using and brandishing a firearm during and in relation to the attempted robbery of J&D Trucking, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). [Doc. 1].  Represented by Allison Cobham Dawson ("Dawson") of the Federal Public Defender Program, Inc., Anderson entered a negotiated guilty plea to Counts Three, Four, and Five.  [Docs. 11; 34; 41].  At the sentencing hearing, the Court determined that Anderson's base offense level was 29 and his criminal history category was IV and that adding the 84-month mandatory consecutive sentence for Count Five resulted in a total guideline range of 205 to 235 months of imprisonment.  [Doc. 58 at 30-31].  The Court imposed a total sentence of 235 months of imprisonment, finding that a sentence at the high end of the guideline range was "warranted by the very egregious circumstances of the case," including Anderson's "substantial" criminal history and present conduct, which included beating and kicking the victim, telling the victim he was going to die, and leaving the victim in a stream where he could have died.  [Id. at 45-46; Doc. 49].

Still represented by Dawson, Anderson appealed, arguing that: (1) the government breached the plea agreement; (2) the Court erred by failing to group Counts Three and Four pursuant to U.S.S.G. § 3D1.2; and (3) his sentence was procedurally and substantively unreasonable.  Br. of Appellant at 2, 14-43 (Feb. 5, 2015), United States v. Anderson, 641 F. App'x 937 (11th Cir. 2016) (per curiam) (14-13979), 2015 WL 628924, at *2, 14-43.  The United States Court of Appeals for the Eleventh Circuit recounted the offense conduct as follows:

> . . . In the early morning of March 11, 2013, Anderson, David Starks, Deshawn Mackey, and two juveniles decided to rob Duty Free America ("DFA"), a business that provided duty free goods to shops in the Atlanta airport.  DFA was next door to J & D Trucking ("J & D"), a different business.
>
> Anderson and his accomplices planned to rob DFA's manager as he was opening the store, so they drove Starks' car to DFA at some time between 3:00 AM and 4:00 AM and waited for the manager to arrive.  Soon thereafter, Paul Moser, a 63-year-old J & D employee, arrived for work and pulled up next to Starks' car.
>
> Anderson and his accomplices spontaneously decided to rob Moser instead of DFA.  Anderson and his accomplices ran up to Moser, beat him, took his wallet, cell phone, wedding ring, and car keys, and forced him into the backseat of Starks' car.  The juveniles drove away in Moser's car.
>
> With Starks driving, Mackey in the front passenger's seat, and Anderson in the backseat with Moser, the attackers drove Moser to several automatic teller machines ("ATMs") in an effort to withdraw money

3

from Moser's bank account.  Initially, Anderson struck Moser because he was not providing the personal identification number for his debit card quickly enough.  As they drove between ATMs, Anderson struck Moser several more times and threatened to kill him, while Mackey pressed a gun to Moser's forehead.

The attackers ultimately were only able to withdraw $60 from Moser's bank account, which made them angry.  The attackers asked Moser where he lived and what kind of valuables he had at his home.  When Moser told the attackers where he lived, the attackers determined that he lived too far away and stated that they should just kill him.

At some point, Moser told his attackers that there was $5,000 in a strongbox at J & D and that he would give it to them in exchange for his freedom.  The attackers began driving back to J & D and allowed Moser to call a J & D coworker in order to arrange for a quick exchange.  Moser called his coworker and asked him to bring the strongbox out to the parking lot.  However, there was no strongbox with $5,000 at J & D.  Rather, Moser was trying to signal that he needed help.  The coworker recognized this and called 911.  By the time the attackers approached J & D, the police had arrived.  The attackers spotted a police car at J & D, so they turned around and drove away with Moser still in the car.

Next, the attackers drove Moser to a residential subdivision, led him behind a vacant house, and told him that they were going to kill him.  Moser believed the attackers were going to execute him.  Despite their repeated death threats, the attackers did not kill Moser.  Rather, Anderson pistol whipped Moser in the face and pushed him into a small pond.  Moser remained motionless on the ground and the attackers eventually left.  Moser crawled back to the roadway and began walking to find help.

At approximately 6:00 AM, responding police officers located Moser.  Moser had significant injuries to his left eye, mouth, and nose, and was bleeding from his face.  Medical professionals later determined that

4

Moser suffered multiple facial fractures that would require surgery to save the use of his left eye.

Anderson, 641 F. App'x at 939-40.   On February 3, 2016, the Eleventh Circuit affirmed Anderson's convictions and sentence.   Id. at 949.

Anderson timely filed this pro se § 2255 motion, arguing that: (1) the sentencing guidelines unconstitutionally require a mandatory minimum sentence even though no such minimum is statutorily required for Anderson's offenses; (2) the presentence report ("PSR") miscalculated his base offense level as 29, when it should have been 28; (3) his conviction for using and brandishing a firearm during a crime of violence (Count Five) should be vacated because his underlying conviction for attempted armed robbery (Count Four) is not a violent crime; (4) his constitutional rights were violated when the Court found that he "brandished" a firearm based on facts not admitted by him or submitted to the jury, in violation of Alleyne v. United States, 133 S. Ct. 2151 (2013); (5) Count Five should be dismissed for failure to state an offense and for lack of subject matter jurisdiction because § 924(c) merely provides a penalty, not an independent offense, and life imprisonment is not a "valid statutory maximum"; (6) the Court erred in accepting Anderson's plea to Count Four when he refused to admit a key element, i.e., that he was part of a plan to aid and abet a

8

robbery; and (7) he received ineffective assistance of counsel when counsel failed to raise the issues presented in grounds one through six in this Court or on direct appeal. [Doc. 62 at 3-25].   The government responds that grounds one through six are procedurally defaulted because Anderson failed to raise them on direct appeal and that ground seven lacks merit.  [Docs. 64; 66].  Anderson replies, arguing that his grounds for relief are not procedurally barred and further reasserting their merits.  [Doc. 67].

## II.  DISCUSSION

### A.   Grounds One Through Six are Procedurally Defaulted

A criminal defendant who fails to raise an issue on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent (1) a showing of cause for the default and actual prejudice or (2) a showing of actual innocence.  McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011).   "[T]o show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal . . ." or that the matter was not raised because of ineffective assistance of counsel.  Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam).  A movant may also establish cause for the procedural default if he can show "that his attorney's

9

performance failed to meet the Strickland[1] standard for effective assistance of counsel." Reece v. United States, 119 F.3d 1462, 1465 (11th Cir. 1997) (internal quotation marks and citation omitted). If a movant shows cause, he must also show prejudice, i.e., that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Reece, 119 F.3d at 1467 (citation omitted).

To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence." McKay, 657 F.3d at 1196 (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)). "The [actual innocence] gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" McQuiggin v. Perkins, 133 S. Ct. 1924, 1936 (2013) (citing Schlup, 513 U.S. at 316).

Anderson did not raise grounds one through six on direct appeal. Anderson argues that challenges to this Court's subject matter jurisdiction may be raised at any time. [Doc. 67 at 2-3]. In ground five, Anderson argues that Count Five should be

---

[1] Strickland v. Washington, 466 U.S. 668 (1984).

10

dismissed for lack of subject matter jurisdiction because § 924(c) merely provides a penalty. [Doc. 62 at 15-19]. This ground fails for the reasons discussed in section II.B.6. Accordingly, it can be, and is, procedurally defaulted. See Smith v. United States, Criminal No. 1:03-CR-088, Civil Action No. 1:06-CV-3151-JOF, 2008 WL 187395, at *3, 6 (N.D. Ga. Jan. 17, 2008) (finding that meritless claim alleging that the government lacked subject matter jurisdiction to prosecute movant was procedurally defaulted because movant did not raise it on direct appeal).

Anderson further asserts that grounds one, two, four, and six present actual innocence claims. [Doc. 67 at 3-6]. Grounds one and two assert legal, not factual, challenges to Anderson's sentence, and "actual innocence means *factual* innocence, not mere legal insufficiency." McKay v. United States, 657 F.3d 1190, 1997-98 (11th Cir. 2011) (citations omitted). Moreover, all of these grounds lack merit as discussed in sections II.B.2, II.B.3., II.B.5., and II.B.7, and Anderson has not cited any "new evidence" or otherwise met Schlup's demanding standard.

Anderson relies on ineffective assistance of counsel to excuse the procedural default. [Doc. 67 at 6, 24-26]. As discussed in section II.B., Anderson's ineffective assistance of counsel claims are not meritorious and, thus, do not establish cause for the default. See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (only

a meritorious ineffective assistance claim "may satisfy the cause exception to a procedural bar"). Accordingly, Anderson is not entitled to relief under § 2255 with respect to grounds one through six.

**B.    Ground Seven: Assistance of Counsel**

**1.    Legal Standards**

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland, 466 U.S. at 687. The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Id. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A court

12

analyzing <u>Strickland</u>'s first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689; <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . .") (citation omitted).  Counsel is not incompetent so long as the particular approach taken could be considered sound strategy.  <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); <u>see also</u> <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden.").

Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Strickland</u>, 466 U.S. at 691.  In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>  The court need not address both

13

components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Id. at 697.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland." Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013) (citations omitted). Thus, to succeed on a claim of ineffective assistance of appellate counsel, a defendant must demonstrate "that counsel's performance was so deficient that it fell below an objective standard of reasonableness . . . [and] that but for the deficient performance, the outcome of the appeal would have been different." Ferrell v. Hall, 640 F.3d 1199, 1236 (11th Cir. 2011). "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted).

### 2.   The Sentencing Guidelines' Alleged *De Facto* Mandatory Minimum

Anderson first maintains that Dawson was ineffective for failing to object or argue that the sentencing guidelines unconstitutionally require a mandatory minimum sentence even though no such minimum is statutorily required for Anderson's offenses. [Doc. 62 at 3-6, 22-25]. At the sentencing hearing, the Court determined that Anderson's base offense level was 29 and that his criminal history category was

IV, resulting in an initial guidelines range of 121 to 151 months of imprisonment. [Doc. 58 at 30].  The Court then added the mandatory 84-month sentence for Count Five, which yielded a total guidelines range of 205 to 235 months of imprisonment. [Id. at 31].  Anderson maintains that his initial guidelines range should have started at zero months of imprisonment because Counts Three and Four did not impose a mandatory minimum and that any low-end guidelines range above zero constitutes constitutional error.  [Doc. 62 at 3-5].  Anderson is incorrect because the guidelines are advisory, not mandatory, and it is well-settled that the advisory guidelines are constitutional.  See United Stats v. Selgjekaj, 194 F. App'x 871, 874 (11th Cir. 2006) (per curiam) ("It is now well-settled that a district court may find facts not found by a jury or admitted by the defendant, and use them in formulating a sentence, as long as it properly applies the Guidelines as advisory."  (citation omitted)).  As such, the mere fact that a criminal statute does not impose a mandatory minimum sentence does not mean that an **advisory** guidelines range starting above zero months of imprisonment is unconstitutional.  Accordingly, Anderson fails to show deficient performance or prejudice based on Dawson's failure to raise this meritless argument.

12

3.     **Anderson's Base Offense Level**

Anderson next asserts that Dawson should have argued that the PSR miscalculated Anderson's base offense level as 29, when it should have been 28. [Doc. 62 at 6-8, 22-25].  Specifically, Anderson contends that his initial offense level for Counts Three and Four was 20, that a total of 11 levels were added for various enhancements, and that he received a 3-level reduction for acceptance of responsibility, all of which should have resulted in a total offense level of 28.  [Id. at 7].  Anderson maintains that the Court relied upon the probation officer's erroneous calculation, which caused the high end of Anderson's guideline range to be fourteen months too high.  [Id.].

The PSR calculated Anderson's total offense level as 33, which included a 5-level enhancement under U.S.S.G. § 2B3.1(b)(2)(c) for brandishing a firearm.  [PSR ¶¶ 40, 68].  At the sentencing hearing, the Court sustained Anderson's objection to the 5-level brandishing enhancement.  [Doc. 58 at 26, 29-30].  As a result, Anderson is correct that his total offense level should have been 28, and with his criminal history category of IV, [PSR ¶ 75; Doc. 58 at 30], and adding the mandatory 84-month consecutive sentence for Count Five, see § 924(c)(1)(A)(ii), his guidelines range should have been 194 to 221 months of imprisonment.  See U.S.S.G. Ch. 5, Pt. A.

13

Instead, the probation officer recalculated Anderson's offense level as 29. [Doc. 58 at 30]. Dawson did not object. [Id.]. Accordingly, the Court determined that Anderson's guidelines range was 205 to 235 months of imprisonment. [Id. at 31]. After Dawson argued for a sentence below the guidelines range and the government recommended a sentence at the low end of that range, the Court imposed a total sentence of 235 months of imprisonment, finding that a sentence at the high end of the guideline range was "warranted by the very egregious circumstances of the case." [Id. at 38-46]. Thus, Anderson's sentence was 14 months above the high end of what his guidelines range would have been had the probation officer determined that his total offense level was 28, and Dawson's failure to object to that calculation was unreasonable. However, based on the record in this case, Anderson has not met his burden to show that Dawson's error prejudiced him, i.e., that the Court would have imposed a lower sentence but for this error given that the Court stated that the sentence imposed was warranted by the "very egregious circumstances" of the offenses, which the Court described as "horrendous," and involved "just beating up Mr. Moser, hitting him with a gun, telling him he was going to die, kicking him, leaving him in a stream where he could have died." [Id. at 45]. The Court added that a "harsh sentence" was warranted based on Anderson's "two prior convictions, which

14

[were] of a substantial nature, and the probation violations," as well as "to deter [him] from future crimes and to tell others like [him] that they can't do that kind of thing and get away with it." [Id.].   Considering the Court's stated reasons for imposing the sentence in this case, Anderson has not carried his burden of showing that he was prejudiced by counsel's error.[2] See United States v. Henderson, 677 F. App'x 661, 665 (11th Cir. 2017) (per curiam) (recognizing that the judge's comments at sentencing may establish that the defendant would have received the same sentence absent an error in calculating the guidelines range, which is consistent with Molina–Martinez); Bates v. United States, 649 F. App'x 971, 975-76 (11th Cir. 2016) (per curiam) (applying Molina-Martinez in the context of ineffective assistance of counsel claim in § 2255 proceeding).   Accordingly, Anderson is not entitled to relief on this ground.

_____

[2] Of course, the Honorable Orinda D. Evans, the United States District Judge who imposed Anderson's sentence, is in the best position to rule on whether Dawson's error prejudiced Anderson.   See Molina-Martinez v. U.S., 136 S. Ct. 1338, 1346 (2016) ("In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome. . . . [However, t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist.   The sentencing process is particular to each defendant, of course, and a reviewing court must consider the facts and circumstances of the case before it." (citation omitted)).

15

**4.**     **Validity of Anderson's Firearms Conviction**

Anderson contends that Dawson was ineffective for not arguing that Anderson's conviction for using and brandishing a firearm during a crime of violence (Count Five) should be vacated because his underlying conviction for attempted Hobbs Act robbery (Count Four) is not a violent crime.  [Doc. 62 at 9-10, 22].  However, the Eleventh Circuit has held that a Hobbs Act robbery does qualify as a "crime of violence" under § 924(c)'s use-of-force clause.  In re Fleur, 824 F.3d 1337, 1340-41 (11th Cir. 2016).  See also In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016) (holding that defendant's "conviction for aiding and abetting a Hobbs Act robbery . . . clearly qualifies as a 'crime of violence' under the use-of-force clause in § 924(c)(3)(A)").  Accordingly, Anderson cannot show deficient performance by counsel or prejudice based on Dawson's failure to raise this meritless argument.

**5.**     ***Alleyne* Claim**

Anderson alleges that Dawson was also ineffective for failing to argue that Anderson's constitutional rights were violated when the Court found that he "brandished" a firearm based on facts not admitted by him or submitted to the jury, in violation of Alleyne.  [Doc. 62 at 10-14, 22-23].  Specifically, Anderson contends that he stated during his plea hearing that he did not have a gun.  [Id. at 10-11].  Anderson

16

also maintains that he was charged in Count Five with "aiding and abetting the use and carry of a firearm in relation to a violent crime, and brandishing," but was not "charged with a conspiracy to use or carry a gun." [Id.].

The Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Alleyne extended that holding to "any fact that increases the mandatory minimum." Id., 133 S. Ct. at 2155. The Supreme Court has further held that to aid and abet a § 924(c) offense, a defendant must have *advance* knowledge of his confederate's plan to carry a firearm. Rosemond v. United States, 134 S. Ct. 1240, 1249 (2014); see also United States v. Brewton, 659 F. App'x 998, 1001 (11th Cir. 2016) (per curiam) (finding that sufficient evidence supported defendant's conviction for using and brandishing a firearm during a crime of violence where the evidence showed that defendant and his confederate acted in concert to rob a jewelry store, that the confederate brandished a gun, and that defendant did not object or withdraw from the robbery).

Anderson pleaded guilty to an attempted Hobbs Act robbery of J&D Trucking, and to using and brandishing a firearm during and in relation to that attempted

AO 72A
(Rev.8/82)

robbery.  See [Docs. 1; 34-1; 41].  At the plea hearing, Anderson denied that he personally had a gun, but admitted that he knew that his co-defendant would use and brandish a gun during the attempted robbery and further that he did not remove himself from the attempted robbery and, instead, participated in it.  [Doc. 41 at 29-30]. Thus, Anderson admitted facts sufficient to support his § 924(c) conviction, no Alleyne violation occurred, and Dawson cannot be faulted for failing to raise this meritless argument.  See Rosemond, 134 S. Ct. at 1249, Brewton, 659 F. App'x at 1001.

### 6.    Subject Matter Jurisdiction under § 924(c)

Anderson also contends that Dawson should have argued that Count Five be dismissed for failure to state an offense and for lack of subject matter jurisdiction because § 924(c) merely provides a penalty, not an independent offense, and life imprisonment is not a "valid statutory maximum." [Doc. 62 at 15-19, 22].  However, the Supreme Court has held that § 924(c) "clearly and indisputably establishes the elements of the basic federal offense of using or carrying a gun during and in relation to a crime of violence." Castillo v. United States, 530 U.S. 120, 124 (2000); see also United States v. Ciszkowski, 492 F.3d 1264, 1268 (11th Cir. 2007) (Section "§ 924(c)(1)(A) . . . describes [a] criminal violation . . .").  Additionally, "every

18

conviction under § 924(c)(1)(A) carries with it a statutory maximum sentence of life imprisonment, regardless of what subsection the defendant is sentenced under." United States v. Pounds, 230 F.3d 1317, 1319 (11th Cir. 2000) (per curiam). Accordingly, Dawson's failure to raise these meritless arguments did not amount to deficient performance or prejudice.

### 7.   **Validity of Anderson's Guilty Plea to Count Four**

Finally, Anderson maintains that Dawson was ineffective for failing to argue that the Court erred in accepting Anderson's plea to Count Four, the attempted Hobbs Act robbery, when he refused to admit a key element, i.e., that he was part of a plan to aid and abet a robbery. [Doc. 62 at 20-22]. Anderson points to his statement during the plea hearing that the attempted robbery of J&D Trucking was "random," not planned, "no one discussed anything[,] it was a spur of the moment thing." [Doc. 41 at 36]. However, Anderson also admitted during his plea colloquy that one of his co-defendants identified the victim as someone they wanted to rob when the victim "drove up and came out of the car" and further that he was pleading guilty to "attempt[ing] to obstruct commerce by robbery, that is, by the taking of property from the presence of another by force, violence or intimidation." [Id. at 38, 43-44]. These admissions are sufficient to support Anderson's conviction on Count Four. See

AO 72A
(Rev.8/82)

United States v. Mack, 626 F. App'x 881, 884 (11th Cir. 2015) (per curiam) ("To obtain a conviction for an attempted Hobbs Act robbery, the government must show that (1) the defendant attempted a robbery and (2) the robbery affected interstate commerce." (citation omitted)).   Furthermore, petitioner's plea of guilty is an "admission that he committed the crime[s] charged against him," North Carolina v. Alford, 400 U.S. 25, 32 (1970), and "comprehend[s] all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence," United States v. Broce, 488 U.S. 563, 569 (1989).   Accordingly, Dawson was not ineffective for failing to raise this meritless challenge to Anderson's guilty plea.

## III.  CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant

20

has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Anderson's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Anderson's § 2255 motion, [Doc. 62], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 3rd day of AUGUST, 2017.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

21